[Crim. No. 1451.  Second Appellate District, Division Two.—January 28, 1927.]

## In the Matter of the Application of H. B. FLESHER for a Writ of Habeas Corpus.

**[1]** STATUTORY CONSTRUCTION — LANGUAGE NOT SUBJECT TO DIFFERENT CONSTRUCTIONS—APPEAL.—An appellate court cannot apply a rule of construction to a statute where its language is not fairly subject to different constructions.

**[2]** CORPORATIONS — POWER OF CONGRESS TO CREATE — CONSTITUTIONAL LAW.—Congress is nowhere expressly authorized to provide by law for the incorporation of corporate entities nor to create corporations, except as the legislative body for the District of Columbia and "all places purchased . . . for the erection of forts, magazines, arsenals, dock yards and other needful buildings," under section 8 of article I of the constitution of the United States.

**[3]** ID.—BANKS AND BANKING—REGULATION—CONSTITUTIONAL LAW.— Under section 8 of article I of the constitution of the United

---

1.  See 23 Cal. Jur. 721; 25 R. C. L. 957.
3.  See 4 Cal. Jur. 114; 3 R. C. L. 655.

States, authorizing Congress to make all necessary laws to carry into execution the powers vested in it by the constitution, Congress has the right to create national banks in aid of the revenue laws, railroad corporations, telegraph companies, and bridge corporations over navigable waters in furtherance of interstate commerce, and the states are without authority, unless permitted by congressional act, to interfere with, or impair by taxation, regulation, or otherwise, the efficiency of such corporations.

[4] ID. — ORGANIZATION UNDER CODE OF LAWS FOR DISTRICT OF COLUMBIA — FOREIGN CORPORATIONS. — Corporations organized and existing under the Code of Laws for the District of Columbia (31 U. S. Stats. at Large, 1189) are not different from those organized in one of the states.

[5] CORPORATE SECURITIES ACT — EXEMPTIONS — CLASSES OF CORPORATIONS—STATUTORY CONSTRUCTION.—The clause in subdivision 3 (a) of section 2 of the Corporate Securities Act (Stats. 1917, p. 673), excepting "corporations organized and existing under and by virtue of the acts of the Congress of the United States" from the operation of the act, is open to construction and interpretation, for the reason that it may refer to two entirely distinct and different kinds of corporations; first, those of a public character, created under section 8 of article I of the constitution of the United States, and, secondly, to those organized under general laws in the District of Columbia or other territories.

[6] ID.—BANKS AND BANKING—PERMITS — EXEMPTIONS — STATUTORY CONSTRUCTION.—The general words of subdivision 3 (a) of section 2 of the Corporate Securities Act (Stats. 1917, p. 673), excluding "national banking associations and other corporations organized and existing under and by virtue of the acts of the Congress of the United States" from the necessity of securing a permit from the corporation commissioner of California in order to sell stock, should be construed, under the rule of *ejusdem generis,* to mean corporations of the same class as national banking organizations.

[7] STATUTORY CONSTRUCTION — STATUTE SUSCEPTIBLE TO DIFFERENT CONSTRUCTIONS—CONSTITUTIONAL LAW.—Where a statute is fairly capable of two different constructions, the court should give to it that construction which will favor its constitutionality.

[8] CORPORATE SECURITIES ACT—CORPORATIONS ORGANIZED UNDER CODE OF LAWS FOR DISTRICT OF COLUMBIA AND TERRITORIES—PERMITS— EXEMPTIONS — CONSTITUTIONAL LAW. — Any clause of the Corporate Securities Act (Stats. 1917, p. 673) which would except cor-

---

7. See 5 Cal. Jur. 615; 25 R. C. L. 1000.

8. Blue sky laws, notes, 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1331; 40 A. L. R. 1014.

porations organized under the Code of Laws for the District of Columbia (31 U. S. Stats. at Large, 1189), or in the territories under general laws, from the necessity of securing a permit from the corporation commissioner in order to sell stock, would be such an unwarranted classification as to render it unconstitutional as a substantial discrimination.

[9] Id. — Purpose of Act—Investment Securities Act—Statutory Construction.—The same purpose was intended in the Corporate Securities Act as in the Investment Securities Act of 1913, the former having been rewritten to supersede the latter without attempting to change the clause exempting certain corporations from the necessity of obtaining a permit from the corporation commissioner in order to sell stock, but merely to arrange it logically and dispense with unnecessary verbiage.

[10] Id.—Foreign Corporations—Legislative Intention—Statutory Construction.—Courts should give effect to the intention of the legislature, in enacting the Corporate Securities Act, to prevent the issuance, without permit, of corporate securities in this state by foreign corporations organized in any other state or territory or the District of Columbia.

---

(1) 36 Cyc., p. 1115, n. 2.    (2) 14 C. J., p. 97, n. 94, p. 98, n. 14. (3) 7 C. J., p. 758, n. 71; 14 C. J., p. 98, n. 3.    (4) 14 C. J., p. 98, n. 14.    (5) 37 C. J., p. 212, n. 50.    (6) 37 C. J., p. 273, n. 71.    (7) 12 C. J., p. 788, n. 1.    (8) 12 C. J., p. 1130, n. 28; 37 C. J., p. 207, n. 85 New.    (9) 37 C. J., p. 271, n. 50.    (10) 37 C. J., p. 271, n. 49 New.

PROCEEDING on Habeas Corpus to secure release from custody on a charge of violating the Corporate Securities Act.  Writ denied.

The facts are stated in the opinion of the court.

Shaw & McDaniel, Victor E. Shaw, W. I. Gilbert, D. H. Cannon and Frank P. Doherty for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

THOMPSON, J.—This is an application for the writ of *habeas corpus* and from the petition and return thereto it appears that the petitioner was charged with violating the Corporate Securities Act.  The complaint shows that on the fifth day of October, 1926, petitioner knowingly, wilfully,

and unlawfully sold ten shares of the capital stock of the Julian Merger Mines, Incorporated, which corporation did not at the time have a permit from the commissioner of corporations of the state of California authorizing it to sell or issue any of its securities. It also shows that the Julian Merger Mines, Incorporated, is organized and existing under and by virtue of the Code of Law for the District of Columbia created by "An Act to establish a Code of Law for the District of Columbia." (31 U. S. Stats. at Large, p. 1189 et seq., approved March 3, 1901.)

The petitioner bases his argument upon section 2 of the Corporate Securities Act (Stats. 1917, p. 673), particularly upon subdivision 3 (a) of that section. Subdivision 3 of section 2 reads as follows: "The word 'company' includes all domestic and foreign private corporations, associations, joint stock companies, and partnerships, of every kind, trustees, as hereinafter defined, and also individuals as hereinafter defined; excepting therefrom:

"(a) All national banking associations and other corporations organized and existing under and by virtue of the acts of the Congress of the United States."

The excepting clause just quoted replaced the following language in the Investment Companies Act (Henning Gen. Laws 1920, p. 1199): "This act shall not apply . . . to corporations, associations, co-partnerships or companies, subject to federal regulation . . . " He contends that the language of the excepting clause is clear and unambiguous and that there is no room for the application of the rules of construction recognized by the courts in those cases where it can be fairly said that the language is capable of two different interpretations. He also maintains that the act is highly penal in its nature and that for that reason we must construe it in accordance with its language. He relies upon the rule that "constructive crimes—crimes built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of English and American criminal law." (*Ex parte McNulty*, 77 Cal. 164 [11 Am. St. Rep. 257, 19 Pac. 237].) Petitioner also claims that the amendment of the exception raises a presumption that the legislature intended by its selection of different words to express a different exception from that originally excluded by the language first used. The attor-

ney-general, on the other hand, maintains that the Corporate Securities Act should receive a liberal construction and that the exemption comprehended by subdivision 3 (a) extends only to those corporations organized and existing under and by virtue of the acts of the Congress of the United States which either pertain to the national government and are of public character or are national in the scope of their intended operation, and urges as one of the reasons for this interpretation the argument that if the clause is construed to include corporations organized under the Code of Law for the District of Columbia there would result such an unwarranted classification and removal of such corporations from the operation of the act as to render the exemption clause unconstitutional.

[1] This argument of the attorney-general commands our most serious attention, for if it be possible to maintain the intent of the people expressed through the legislative branch of the government and yet save the section from danger of attack on the ground of its unconstitutionality, such result is in entire consonance with all of the rules of construction. We cannot, however, apply a rule of construction where there exists no room for construction. [2] We must first of all be convinced that the exemption is fairly subject to two different constructions before applying any rule, and in this particular it should be noted that Congress is nowhere expressly authorized to provide by law for the incorporation of corporate entities, nor to create corporations except as the legislative body for the District of Columbia and "all places purchased . . . for the erection of forts, magazines, arsenals, dock yards and other needful buildings" (sec. 8, art. I, U. S. Const.). [3] The power which it has and exercises by which corporations are otherwise created is referable to the last subdivision of article I, section 8, of the constitution of the United States, as follows: "To make all laws that shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." Under this last clause it has been held that Congress has the right to create national banks in aid of the revenue laws, railroad corporations, telegraph companies, and bridge corporations over navigable waters in further-

ance of interstate commerce.   (*McCulloch* v. *State of Maryland*, 4 Wheat. (U. S.) 316 [4 L. Ed. 579, sec, also, Rose's U. S. Notes]; *Sanford* v. *Poc*, 165 U. S. 194 [41 L. Ed. 683, 17 Sup. Ct. Rep. 316]; *Osborn* v. *Bank of United States*, 9 Wheat. 738 (22 U. S.) 739 [6 L. Ed. 204]; *Luxton* v. *North River Bridge Co.*, 153 U. S. 525 [38 L. Ed. 808, 14 Sup. Ct. Rep. 891]; *California* v. *Central Pac. R. R. Co.*, 127 U. S. 1 [32 L. Ed. 150, 8 Sup. Ct. Rep. 1073]; *Union Pac. Ry. Co.* v. *Myers*, 115 U. S. 1 [29 L. Ed. 319, 5 Sup. Ct. Rep. 1113]; and *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 19 Fed. Cas. No. 10,960; affirmed, 96 U. S. 1 [24 L. Ed. 708].)   The cases just cited are also authority for the proposition that where Congress provides for the establishment of any such corporation in furtherance of some power or authority granted by Congress by the Constitution that the states are without authority, unless permitted by congressional act, to interfere or impair by taxation, regulation, or otherwise, the efficiency of such corporations.   As was said by Chief Justice Marshall in the case of *Osborn* v. *Bank of United States, supra*, ''The bank is not considered as a private corporation, whose principal object is individual trade and individual profit; but as a public corporation, created for public and national purposes.   That the mere business of banking is, in its own nature, a private business, and may be carried on by individuals or companies having no political connection with the government, is admitted; but the bank is not such an individual or company.   It was not created for its own sake, or for private purposes.   It has never been supposed that Congress could create such a corporation.   The whole opinion of the court, in the case of *McCulloch* v. *The State of Maryland*, is founded on, and sustained by, the idea that the bank is an instrument which is 'necessary and proper for carrying into effect the powers vested in the government of the United States.'   It is not an instrument which the government found ready-made, and has supposed to be adapted to its purposes; but one which was created in the form in which it now appears, for national purposes only.''

[4]   When, however, we come to corporations such as the present one, organized and existing under the Code of Law for the District of Columbia, we are confronted by an entirely different situation.   Corporations so organized

are not different from those organized in one of the states of the Union. *Layden v. Endowment Rank, Knights of Pythias of the World,* 128 N. C. 546 [39 S. E. 47], points out the distinction in this language: "The line of demarcation between State and Federal authority does not depend upon territorial limits, but upon the subject matter of legislative or judicial construction as defined by the constitution of the United States. This doctrine applies to the Federal Government only in its relation to the states, as it is controlled by principles essentially different when dealing with the District of Columbia or other territories of the United States. Congress is the supreme law making power of all territories, certainly unrestricted by any local authority, and it would seem but indefinitely so even by the Federal Constitution. In such cases it seems to us that Congress acts, not in its national capacity but as a local legislature; and its acts, unless otherwise clearly expressed, are confined in their binding operation to the purposes for which they were originally intended. We therefore think that corporations chartered primarily to do business in the District of Columbia have no right, beyond that of comity, to operate in any of the states, unless expressly authorized by their charters. They therefore stand on the same footing as corporations of other states, so far as the act of 1899 is concerned." (See, also, *Williams v. Creswell,* 51 Miss. 817.)

A casual inspection of the other exemptions noted under subdivision 3 of section 2 of the Corporate Securities Act and designated as (b), (c), (d), and (e), conveys to our mind the legislative intent to exclude from the definitive words of the section all corporations subject to some other supervisory power of the state and corporations whose purposes are benevolent, religious, social, humane, or the advancement and promotion of the general good without profit. There is nowhere, except possibly in the clause under consideration, the slightest indication to exclude a corporation formed for profit, the securities of which might properly be brought under the supervision of the commissioner except those where the issuance of securities was already under supervision.

[5] From the investigation so far made it seems reasonably clear, regardless of what effect must eventually be given to the words "other corporations organized and exist-

ing under and by virtue of the acts of the Congress of the United States," that the legislature had in mind the advisability of excluding from its definition and from the operation of the act those corporations which, comparable to national banking organizations, are organized in furtherance of some power or authority vested in Congress and with the operation of which it was without power to interfere. The last statement is the equivalent of saying that it was not the legislative intent to exclude from the operation of the act those corporations over which the state has a perfect right to exercise its regulatory measures to prevent the improper or fraudulent issuance of securities. We are of the opinion that the excepting clause is open to construction and interpretation for the reason that "corporations organized and existing under and by virtue of acts of the Congress of the United States," means two entirely distinct and different kinds of corporations; first, there are those similar to national banking organizations of a public character, and, secondly, those organized in the District of Columbia or other territories under general laws providing for the incorporation of private business undertakings. **[6]** Under this situation we think the rule generally known as the rule of *ejusdem generis* should apply, and that the general words in question should be construed to mean the same class or general nature of corporations as national banking organizations, to wit, corporations organized in furtherance of some power conferred upon Congress. (*Pasadena University* v. *Los Angeles County*, 190 Cal. 786 [214 Pac. 868]; 25 R. C. L. 996, 997.) Petitioner's contention that this rule has no application in the present instance by reason of the rule that courts favor a construction which will render every word operative rather than one which renders some words nugatory, is not well taken for the reason, as we have seen, that the intent as gathered from the act as a whole is consistent with the application of the rule of *ejusdem generis.*

**[7]** The interpretation thus put upon the words is reinforced by the well-recognized rule of interpretation that where a statute is fairly capable of two different constructions the court should give to it that construction which will favor its constitutionality rather than one which might render it unconstitutional. **[8]** If we should adopt the

reasoning of petitioner upon this question, corporations organized in the District of Columbia or under acts of Congress in our territorial possessions, there would seem to be a discrimination in favor of such corporations not supported by any reasonable basis for such classification. It is well settled that a statute which contains exemptions amounting to substantial discriminations, without a reasonable basis therefor, is unconstitutional. (*Pasadena* v. *Stimson*, 91 Cal. 238 [27 Pac. 604]; *In re Rawley*, 177 Cal. 746 [171 Pac. 950], and cases cited.) On the other hand, the interpretation which we have given to the language seems to be entirely free of such objection and in keeping with the whole spirit and intent of the Corporate Securities Act.

Nor do we think that the interpretation which we feel should be given to the words in question can in any sense be said to be a strained interpretation resulting in the creation of a constructive offense as denounced in *Ex parte McNulty, supra*. The rule thus announced must be founded upon the thought that every person is entitled to know by a reading of the law what offense is denounced therein, and although the language here may be considered capable of two different interpretations according to rules of law, we are of the opinion that an ordinary person reading the Corporate Securities Act as a whole would come to the conclusion that the legislature had intended to prevent the issuance of securities without permit, of all domestic and foreign corporations, whether organized in a state, territory, or the District of Columbia.

[9] While the language of the exempting clause in the Corporate Securities Act is different from that of the Investment Companies Act of 1913 (Stats. 1913, p. 715), we do not believe that it is controlling or that it necessarily indicates that a different purpose was intended. Had it been only the language of the exempting clause which was changed it would have greater weight than it has here because the Corporate Securities Act was in fact rewritten to supersede the Investment Companies Act. The rule is well stated in *United States & Canada Land Co.* v. *Sullivan*, 113 Minn. 27 [Ann. Cas. 1912A, 51, 128 N. W. 1112], in this language: "And though a change in the phraseology of an amendatory statute raises a presumption that a departure from the old law was intended, such a change is not ordi-

narily or necessarily of particular significance in the case of a general revision or codification, for the new language may be attributed to a desire to condense and simplify the law.'' A comparison of the two statutes compels us to the conclusion that the act was rewritten without attempting to change it in this particular, but to arrange it logically and dispense with unnecessary verbiage. [10] Our general conclusion is that we should give effect to the intention of the legislature to prevent the issuance, without permit, of corporate securities in this state by foreign corporations organized in any other state or territory or the District of Columbia.

The writ is discharged and the petitioner is remanded.

Works, P. J., and Craig, J., concurred.