[L. A. No. 14975. In Bank.—April 19, 1935.]

HECTOR GILLIS et al., Appellants, v. PAN AMERICAN WESTERN PETROLEUM COMPANY (a Corporation) et al., Defendants; EDWARD L. DOHENY et al., Respondents.

W. A. Alderson, L. Frank Ottofy, G. C. De Garmo, W. M. Crane, Mott, Vallee & Grant, John G. Mott and Paul Vallee for Appellants.

Latham, Watkins & Bouchard, Dana Latham, Paul R. Watkins, U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, as *Amici Curiae* on Behalf of Appellants.

Wellborn & Wellborn, O'Melveny, Tuller & Myers, Louis W. Myers, Jackson W. Chance, Olin Wellborn, Jr., Olin Wellborn III, and Frank J. Hogan for Respondents.

Laurence W. Beilenson as *Amicus Curiae* on Behalf of Respondents.

THOMPSON, J.—The plaintiffs commenced this action against the defendant corporation and its directors to recover from them the amounts paid by them for capital stock of the corporation, it being alleged that no permit had been issued authorizing issuance of stock in California. Demurrers to the complaint and amended complaint having been sustained, with leave to amend, plaintiffs filed their second amended complaint, to which the individual defendants interposed a demurrer, which was sustained without leave to amend. This appeal is from the judgment of dismissal in favor of the demurring defendants rendered pursuant to the foregoing order.

The allegations of the second amended complaint, to which we shall refer hereafter as the complaint, may be briefly summarized as follows: The individual defendants were the incorporators and at all the times mentioned the directors of the defendant corporation. They organized it under the laws of Delaware for the purpose and with the plan of taking title to certain California property, and of conducting its business and maintaining its principal place of business at Los Angeles, California, and since its incorporation the company has maintained its principal place of business at Los Angeles, and has transacted all of its business there, including the holding of its meetings of directors. It is alleged that the plan of incorporating under the laws of Delaware was designedly and purposely followed for the purpose of evading the Corporate Securities Act of this state. It is then set forth that subsequent to the establishment of its principal place of business the individual defendants as directors and at meetings of the board in California, ordered issued certain of its capital stock, including that sold to appellants, and did order issued and did issue to appellants in California twenty-two hundred shares, for which appellants paid the sum of $63,357.50. Allegations then follow to the effect that the defendant corporation had not applied for a permit authorizing it to issue its capital stock, and had wholly failed to comply with the provisions of the Corporate Securities Act; that the certificates issued to appellants were void and worthless; that all

of the defendants knowingly directed and aided and assisted in the issuance of the stock; that appellants, although they commenced their purchases on December 16, 1925, and ended them on April 3, 1928, did not nor did either of them know that the corporation had not complied with the provisions of the Corporate Securities Act until the 10th of October, 1930, at which time an article was published in a Los Angeles newspaper to the effect that the corporation had sold its stock without a permit; that plaintiffs relied implicitly upon the genuineness of the stock issued to them and believing that the corporation had complied with all the provisions of the Corporate Securities Act; and finally that appellants were damaged in the sum paid for the stock which has been lost to them by the issuance of said stock.

We are concerned, of course, with whether the demurrer was properly sustained and must of necessity examine the contentions of respondents to determine the question. They assert that the issuance of capital stock is an internal affair of a corporation governed by the law of the state where it was incorporated, and rely upon such authorities as *Southern Sierras Power Co.* v. *Railroad Commission,* 205 Cal. 479 [271 Pac. 747], *In re Fryeburg Water Co.,* 79 N. H. 123 [106 Atl. 225, 18 A. L. R. 1373], and *Mau* v. *Montana Pacific Oil Co.,* 16 Del. Ch. 114 [141 Atl. 828]. An examination of the cited authorities demonstrates that they are not persuasive of the point that the state lacks the power to declare void the issuance of stock in this state by a foreign corporation. The Southern Sierras case was one where a Wyoming corporation, engaged in this state in the generation and sale of electrical energy, sought to compel the Railroad Commission to grant it permission to issue $2,000,000 of its preferred stock for the purpose of refunding or paying its outstanding obligations. The court held that the commission was without jurisdiction, for the reason that it was never intended by the Public Utilities Act of this state "to subject foreign corporations to regulation concerning the exercise of the inherent corporate powers conferred upon them by the legislative power of the incorporating state". It was largely grounded upon the Fryeburg case, which was very similar in character. The Fryeburg Water Company was a Maine corporation doing business in both Maine and New Hampshire. It sought to

compel the public service commission to approve that portion of a stock dividend which was represented by its capital investment in New Hampshire. The court refused the writ upon the statement that while the language of the act conferring authority upon the commission was quite broad it would not be "presumed that the legislature intended to give the commission power to regulate the internal affairs of such corporations". We have no criticism of these authorities. Indeed, in *Commonwealth Acceptance Corp.* v. *Jordan,* 198 Cal. 618 [246 Pac. 796], this court called attention to the well-known fact that the laws of the several states authorize different capital stock structures for corporations, and under the doctrine of comity they are allowed, in the absence of express constitutional or statutory inhibitions, to enter other states for the purpose of doing business, regardless of whether a corporation with like structure is permitted to be formed in the latter states. However, these authorities are far from holding that the issuance and sale of the stock in a state other than that in which the corporation is formed is not a proper subject for legislative action. A number of authorities by their conclusions confirm the right of the state to protect its citizens, by legislative interposition, against the issuance or sale of stock in the state. Among these we cite, *Hohn* v. *Peters,* 216 Cal. 406 [14 Pac. (2d) 519]; *Hayden Plan Co.* v. *Friedlander,* 97 Cal. App. 12–16 [275 Pac. 248, 253]; *In re Flesher,* 81 Cal. App. 128 [252 Pac. 1057]. In the case of *London, Paris & American Bank* v. *Aronstein,* 117 Fed. 601–609, it is said: "It is true that the courts in California cannot control the internal affairs of any foreign corporation. Such matters are to be conducted in pursuance of and in compliance with the provisions of the charter of the foreign corporation, and the laws of the country where it was created; but in the management and method of its business affairs in California with the citizens and residents thereof, *in the sale or disposition or transfer of the shares of stock,* it must conform to the laws of California in relation to such matters, and is bound thereby. In the recent case of *Williams* v. *Gaylord, supra,* 186 U. S. 157 [22 Sup. Ct. 798, 46 L. Ed. 1102], the Supreme Court of the United States said: 'When a corporation sells or encumbers its property, incurs debts, or gives securities, it does business; and a statute regulating such transactions does not regulate

the internal affairs of the corporation.'" (Italics ours.) In *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539–550 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514], we find a similar statement of the purpose of legisla-tion similar to that we are considering which is helpful in arriving at a sound conclusion. It is as follows: "It will be observed, therefore, that the law is a regulation of busi-ness, constrains conduct only to that end, the purpose being to protect the public against the imposition of unsubstantial schemes and the securities based upon them. Whatever prohibition there is, is a means to the same purpose, made necessary, it may be supposed, by the persistence of evil and its insidious forms and the experience of the inadequacy of penalties or other repressive measures." To like effect is *Merrick* v. *N. W. Halsey & Co.*, 242 U. S. 568 [37 Sup. Ct. 227, 61 L. Ed. 498]. The case of *Biddle* v. *Smith*, 148 Tenn. 489–494 [256 S. W. 453], is authority for the proposi-tion that in order "to protect residents of the state against the imposition of worthless investments offered by domestic and foreign investment companies under whatsoever guise presented", the legislature is empowered to restrict valid issues to those which are in accordance with a permit there-for and to declare void other issues. To the same effect is *Edward* v. *Ioor*, 205 Mich. 617 [172 S. W. 620, 15 A. L. R. 256]. Conceding, therefore, the premise of respondents' argument that ordinarily speaking the issuance of capital stock or the stock structure of a corporation is an internal affair, yet the issuance and sale of stock within a state other than that of its organization may be regulated in order to protect the residents and citizens of the former state. And in order to render such regulation effective it is undoubtedly within the legislative power to declare that acts done in contravention of the statute shall be void. From the fore-going observations it becomes apparent that the element which takes the forbidden acts beyond the realm of the corporation's internal affairs, is that of dealing with the stock in this state in such a manner that residents of this state may not be defrauded by dishonest corporations. Cor-porations conducted in good faith must submit to its regu-lation in order to prevent the operation of those which are not so run.

We are not convinced by the reasoning in *Mau* v. *Mon-tana Pacific Oil Co.*, *supra*. What is there said to the con-

trary of our conclusions was not necessary to a decision of the case, and appears to have entirely overlooked the protective factor which we have assigned as the justification for such legislation. This may possibly be explained by the fact that the state wherein it was rendered is one of two where similar legislation has not been adopted.

█ It is next asserted by respondents that the complaint is not grounded in fraud, but upon contract. Their argument in this particular is to the effect that while the sale of stock may be void, the issuance thereof is not, hence the purchasers received valid stock, or, as phrased in the brief, "got just what he bargained for, to wit: validly issued stock". Assuming that it is necessary to do more than point out the circuitous route of the argument, we think the conclusion reached upon the first contention effectually disposes of this suggestion. However, respondents say, assuming the invalidity of the issuance of stock, yet the plaintiffs have elected to disaffirm the contract and sue in contract— or have disaffirmed the contract because of lack of consideration and are seeking the recovery of the moneys paid out thereunder. With this argument we may also consider the assertion, separately stated by respondents, that plaintiffs have pleaded no actionable fraud. In substance, as already observed, the plaintiffs alleged that these respondents ordered the stock to be issued and sold in California; that the defendant corporation had no permit; and that plaintiffs were unaware of this noncompliance with the law when they purchased the stock so ordered to be issued; that plaintiffs relied upon the genuineness of the stock; that all of respondents knowingly aided and assisted in the issuance of the stock; and that the plan of organization was designed by respondents to evade the laws of California. We think respondents misconceive the purpose of these allegations. In *Green* v. *Caribou Oil Min. Co.*, 179 Cal. 787 [178 Pac. 950], involving a certificate of stock illegally issued, this court in referring to fraud said: "It comes from the false issue itself, which is the act of the corporation officers within the apparent scope of their authority, which, in effect, is a representation by the corporation itself to the purchaser from the original holder that the false stock is genuine." █ So, here, when respondents valued the stock issued and took all the necessary preliminary steps, and had the corporation issue the stock to appellants, they, in effect, represented that

they had complied with the Corporate Securities Act and had obtained a permit without which the stock could not be issued or sold. Such is the effect of *Boss* v. *Silent Drama Syndicate,* 82 Cal. App. 109 [255 Pac. 225], where the court said that the purchaser had the right to rely upon a similar representation. And in *MacDonald* v. *Reich & Lievre, Inc.,* 100 Cal. App. 736–742 [281 Pac. 106], we read: "When a corporation issues to the public certificates of stock, regular on their face, it amounts substantially to a representation that the certificates are regular and valid. Certificates of stock so issued by a corporation, but which were irregular or void for reasons not participated in by the stockholder, have been held to amount to a misrepresentation and fraud upon the part of the corporation officials for which the corporation is answerable." (Citing cases.) To the same effect reference may be had to *Walker* v. *Harbor Realty & Development Corp.,* 214 Cal. 46 [3 Pac. (2d) 557]; *Randall* v. *California L. B. Syndicate,* 217 Cal. 594 [20 Pac. (2d) 331], *Mannion* v. *Baldwin,* 217 Cal. 600 [20 Pac. (2d) 678], and *Holmquist* v. *Kent,* 219 Cal. 231 [25 Pac. (2d) 977]. The allegations of the present case bring it within the rule announced—and we are not called upon to consider an assumed situation where the information of the purchasers is sufficient to remove it from the operations of the rule.

█ An argument is advanced to the effect that inasmuch as the issue is void and cannot be affirmed we must as a matter of logic hold, since contracts induced by fraud may be ratified, that fraud cannot be made the foundation of the action. This contention overlooks the fact that the contract is void irrespective of the fraud and not by reason of it. The fraud induced a void contract, it is true, but assuming that there had been no fraud the contract would still have been void, even though in certain circumstances under the rule of *pari delicto* the courts would render no relief to the purchaser.

█ Respondents further contend that the action is barred by the statute of limitations, the basis of their argument being that appellants have failed to allege the reason why they did not discover the fraud sooner than October 10, 1930. A sufficient answer to this contention is found in the fact that the demurrer does not set up the statute as a reason for the failure of the complaint to state a cause of action, nor did it refer to any section of the code

which it is claimed bars the action. The authorities are unanimous to the effect that in order to raise the applicability of a statute of limitations this ground must be stated in the demurrer. (See *McFarland* v. *Holcomb*, 123 Cal. 84 [55 Pac. 761]; *Salveter* v. *Salveter*, 135 Cal. App. 238 [26 Pac. (2d) 836].)

Other claims are made, which when analyzed are found to be restatements of points already sufficiently discussed. We believe that no useful purpose would be served by extending this opinion. From what has already been said it is obvious that the complaint stated a cause of action, and that the demurrer should have been overruled.

Judgment reversed.

Shenk, J., Preston, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.