SAN MIGUEL, GONZÁLEZ AND VALIENTE & Co., Plaintiff and Appellee, *v.* MIGUEL GUEVARA ET AL., Defendants and Appellants.

No. 9039. Argued January 17, 1945.—Decided May 9, 1945.

---

[1] Some of these articles were brought in after repeal of § 16 a.

918

*García Méndez & García Méndez* for appellants.  *E. Martínez Rivera* and *Luis Blanco Lugo* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

M. Casildo Guevara and Miguel Guevara issued a promissory note [1] in 1931 on which the present action of debt has been brought.

On September 29, 1932, the District Court of San Juan issued an order in civil case No. 17,493, entitled *Fano, Act-*

---

[1] In its pertinent part it reads thus:

"For $12,000.  Matures on January 15, 1932.

"We promise to pay severally to Banco Territorial & Agrícola de Puerto Rico, in its business place or to order on January 15, 1932 the amount of twelve thousand dollars and 00/100, value received on loan and we bind ourselves severally also to pay annual interest at 12 per cent in case of default and the costs and expenses that may be incurred in the collection of this debt and the fees of the attorney for the Bank in case of judicial claim."

*ing Treasurer of Puerto Rico* v. *Banco Territorial & Agrícola de Puerto Rico,* by virtue of which said bank was submitted to judicial administration for its liquidation under the jurisdiction of said court. Within this proceeding and after a public sale had been held, the court rendered another order on January 7, 1943, directing the Banco Popular de Puerto Rico, appointed statutory liquidator of Banco Territorial & Agrícola on May 10, 1937, to convey to Agustín Valiente Granda, upon payment of $8,000, all the credits belonging to the bank in liquidation which were pending payment and which were considered uncollectible. Among these credits, which amounted to about $400,000, was the promissory note on which this suit was brought.

At this stage, on March 10, 1943, the partnership San Miguel, González and Valiente & Co. filed a complaint against M. Casildo Guevara and Miguel Guevara for the collection of the aforesaid obligation alleging to be its holder, and prayed judgment for the sum of $22,449.34, to wit: (*a*) $10,139.72, that is, the amount of the principal of the obligation after several credits had been deducted, and (*b*) $12,309.62, as interest accrued at 12 per cent per annum since January 15, 1932, maturity date of the promissory note.

The defendants interposed a demurrer and alleged that the complaint did not state facts sufficient to constitute a cause of action, but the District Court of Arecibo, to which the case had been transferred, overruled the same on the ground that, although in the memorandum presented by the defendants it was alleged that the action had prescribed because it dealt with a promissory note payable to order, which is subject to the rebuttable presumption of being a mercantile obligation, the demurrer which was interposed was of a general character wherein the plea of prescription was not specifically alleged, and therefore that the complaint was sufficient.

The defendant thereupon answered and reproduced the demurrer, accepting the issuance of the promissory note and

alleged, as new matter of defense, that the action to recover the promissory note had prescribed because it was a mercantile obligation.

After a hearing, where evidence was introduced, the court rendered judgment sustaining the complaint and adjudging the defendants to pay $22,449.34, with costs, legal interest, and $300 as attorney's fees. The defendants appealed.

■■ The appellants first contend that since a promissory note payable to order is involved, the same carries with it the rebuttable presumption that it is a mercantile instrument and, consequently, in the absence of evidence to the contrary, it prescribes within the three-year period fixed by the Code of Commerce; and since it was not alleged in the complaint that the promissory note was not of a mercantile character, a demurrer lay; and that the Court erred in dismissing the demurrer for insufficiency.

Is it necessary to specifically allege the prescription in the demurrer? The case at bar is not governed by the new Rules of Civil Procedure, inasmuch as the demurrer was decided by the court prior to the effectiveness thereof, and this being so, the rule adopted by this court is to the effect that a general demurrer wherein prescription is not specifically alleged as a defect on which the demurrer is based is not sufficient for the dismissal of the complaint, *Guzmán* v. *Vidal*, 8 P.R.R. 329, 335; *Catoni* v. *Martorell*, 38 P.R.R. 295, 298. It has been likewise so held in a majority of American jurisdictions and specially in California *Joergenson* v. *Joergenson*, 68 P. 913; *Miller* v. *Parker*, 18 P. (2d) 89; *Graham* v. *Los Angeles First Nat. Trust & Saving Bank*, 43 P. (2d) 543, 546; *Gillis et al.* v. *Pan-American Western Petroleum Co.*, 44 P. (2d) 311.[2]

[2] The same doctrine is expressed in Bancroft, 1 Code Pleading, § 320:

"As a general rule, the plea that an action is barred by the statute of limitations may be taken either by demurrer or answer, by demurrer if it appears upon the face of the complaint that the action is barred, and no facts are alleged taking the demand from the operation of the statute; by

The situation which appears in the case at bar clearly falls under the rule stated above, and therefore the district court did not err in dismissing the demurrer.

█ In the second assignment of error the appellants complain of the admission in evidence of two letters addressed by the plaintiff firm to the defendants, on February 16, 1943, seeking to collect the indebtedness. This evidence, was conditionally admitted by the lower court, it being stated by the judge that if "the prescription is confirmed, it will have no value, if it is not confirmed, it will be accorded whatever probative value it may have under the law."

The objection of the defendants consisted in that according to § 941 of the Code of Commerce (1932 ed.) : "Prescription shall be interrupted by suit or any judicial proceeding brought against the debtor, by the acknowledgment of the obligations, or by the renewal of the instrument on which the right of the creditor is based," and that since the letters are extrajudicial requests, they should not have been admitted in evidence as an attempt to collection tending to prove an interruption in the prescription. Appellants are wrong.

The court had before it the question—which was fundamental in this case—of whether the promissory note was of a mercantile character or not. This question could only be determined in accordance with the evidence. If the loan evidenced by the promissory note is of a civil nature, the action to recover the same would be governed by the Civil Code, and § 1873 thereof would be applicable, as follows: "Prescription of actions is interrupted by their institution before the courts, *by extrajudicial claim of the creditor,* and by any act of acknowledgment of the debt by the debtor." (Italics ours.)

answer, if the demand be in truth barred, but the fact does not appear on the face of the complaint. ... In no case may the statute be relied on under a general denial; it must be specially pleaded, *especially where the benefit of an act which applies only to a particular class of cases is claimed.*" (Italics ours.)

The error assigned was not committed, since the probatory value of the letters depended on whether the evidence showed that the loan was of a civil or mercantile character.

In the third assignment of error the appellants maintain that the district court erred in deciding that it was not a mercantile promissory note and therefore that the action had not prescribed.

We have repeatedly held that a promissory note payable to order carries with it the rebuttable presumption that it is of a mercantile character.[3] Was this presumption overcome in the case at bar? Let us briefly examine the evidence introduced.

Plaintiff's sole witness was Miguel Antonio Guevara, who testified that he was the son of Miguel Guevara and nephew of M. Casildo Guevara, that is, the defendants in this case; that he intervened in the making of the promissory note; that the latter represents "the consolidation of several other obligations that originated in certain transactions" between

---

[3] Since 1906, in *Hernández* v. *Muñiz*, 10 P.R.R. 16, 19, this court adopted the doctrine laid down by the judgment of the Supreme Court of Spain, of January 25, 1898, in *Silvestre Ayoldi* v. *Banco de España*, 83 Civil Jurisprudence 160, establishing that:

". . . promissory notes payable to order and endorsements made thereon should be considered as commercial instruments in accordance with article 2 of the Code of Commerce, as they are expressly defined in the said law, the presumption being therefore that they proceed from commercial transactions, where there is no evidence to the contrary."

In *Salgado* v. *Villamil et al.*, 14 P.R.R. 437, 445 (1908) and in *Rosaly* v. *Alvarado*, 17 P.R.R. 100, 102 (1911), this doctrine was ratified; and although in *Ochoa & Hermano* v. *Heirs or Successors of Lanza*, 17 P.R.R. 398, it was stated that the promissory notes payable to order are mercantile instruments, said decision was clarified in *Vázquez* v. *Laíno*, 23 P.R.R. 218 (1915), where the existence of the rebuttable presumption as to the mercantile character of said instruments was again established. Subsequently the doctrine has been reaffirmed until the present in *Román* v. *Martínez*, 25 P.R.R. 610; *Fernández* v. *Ruiz Soler et al.*, 27 P.R.R. 74, 77; *Barros* v. *Padial*, 35 P.R.R. 237; *Catoni* v. *Martorell*, *supra*; *Totti* v. *Fernández*, 40 P.R.R. 609; *Pierluissi* v. *Monllor*, 42 P.R.R. 6; *Heirs of Franceschi* v. *González*, 42 P.R.R. 901; *Blondet* v. *Garáu*, 47 P.R.R. 820; *Barceló & Co., S. en C.* v. *Olmo*, 48 P.R.R. 239, 241; *Banco de P. R., Liquidator, etc.* v. *Rodríguez*, 53 P.R.R. 166, and *Cayere* v. *Buxó*, 62 P.R.R. 880.

his father and the bank "in the course of business," for the bank gave his father credit "for his commercial transactions" inasmuch as he was engaged in the purchase of leaf tobacco, chewing tobacco, and minor crops; that his father had been allowed a credit and the obligations were discounted in order to have a fund with which to finance his commercial transactions; that the bank gave him the money and discounted the bills for said transactions; that the Bank did not grant crop loans to his father because his business was not agricultural but purely mercantile; that for every transaction of credit in his father's current account an obligation was issued; that there were many credits and the bank asked him to consolidate them into one obligation in order to include the others and eliminate them; that his father as well as the other maker of the obligation were merchants; that the manner in which the bank gave his father credit was "that the latter issued obligations, drafts, or various commercial instruments which were brought to the bank" and were credited to his father's account and then he drew against those funds; that he draw upon many purchasers and the drafts were offered to the bank and credited to his account and if left unpaid he notified and they were covered by obligations issued by him; that his father did business in that manner for a long time; that the obligations which were consolidated into one originated in that business; that in 1928 by reason of the San Felipe hurricane his father suffered great losses and in 1930 a total loss by reason of a fire in the main storehouses; that the bank continued to give him credit; that the promissory note sued on is the "consolidation of several other obligations bearing various signatures which were deposited in the bank," and that they continued to do business in that way; that the drafts were issued against persons to whom they sold merchandise, were credited to the account and if not paid a promissory note was issued; that they gave to the bank as security for the loan up to two hundred rolls of chewing tobacco which were

sold and the proceeds thereof, credited to the promissory note; that said tobacco proceeded from certain purchases made by his father in the business;[4] that his father was engaged in agriculture also, but the accounts of that business were deposited in other banks and he kept distinct and separate books from his commercial transactions.

The evidence of the defendants consisted in the testimony of the witnesses José Otero Chaves, Enrique Alcaraz, and Miguel Antonio Guevara. The first witness testified that he was a merchant and that he did tobacco business with Miguel Guevara, who had a grocery store in the ward of Bejuco, Isabela, because the latter was also engaged in the tobacco business and truck gardening; that the witness held an interest in a partnership, Otero Hermanos, and Guevara bought construction material from them and paid with checks or bills which were discounted by the Banco Territorial & Agrícola; that he knew that Guevara had business transactions with said bank; that defendant Casildo Guevara was also a merchant and had another grocery store in the same ward.[5].

Mr. Alcaraz, ex-manager of the Banco Territorial & Agrícola of Arecibo, corroborated the testimony of Miguel Antonio Guevara in the sense that all the transactions carried out by Miguel Guevara with the bank proceeded from his business; that Mr. Guevara "drew drafts on other merchants and deposited them in the bank and when any of the drafts were returned for any reason they were charged to

[4] Exhibit D of the plaintiff is a letter addressed by Miguel Guevara to the bank on January 25, 1933, wherein the following appeared in connection with this tobacco:

"I am referring to the two hundred rolls of chewing tobacco which I had given to you as collateral security and wish to state that to my best way of thinking I believe the time has come to begin selling them. It seems advisable that you should order its sale either on your account or with my intervention, for in my opinion the market will not improve hereafter, and the tobacco is beginning to lose its grade due to the long time elapsed since it was elaborated."

[5] It was stipulated that Diego G. González would testify in the same manner as Otero.

his own account," and then when the account showed an un-covered balance or was overdrawn, promissory notes were issued.

We are of the opinion that this evidence, instead of over-coming the presumption that the obligation was of a mer-cantile character, ratified the same. The evidence as a whole and uncontradicted showed that the bank requested Miguel Guevara to make a promissory note which was to substitute a series of obligations of a mercantile character issued by him in the commercial transactions with other persons and entities. The commercial origin of these transactions has not been controverted. On the contrary, it has been estab-lished by the very evidence of the plaintiff.

In *M. Gómez & Co.* v. *Guerra,* 42 P.R.R. 841, a promis-sory note which was not payable to order because it was only a security for payment, was substituted by a promis-sory note payable to the order of the plaintiff, and it was held that although the latter instrument was presumed to be a mercantile instrument because it was drawn to order, "the facts which appear from the evidence overcome such presumption, inasmuch as they show a substitution of the original instrument which, not being of a mercantile char-acter, did not render commercial the second instrument." (P. 843.) On the other hand, in the case at bar, the evi-dence showed that the previous obligations were of a mer-cantile character, and upon being consolidated in and sub-stituted by the promissory note sued on, the commercial character of the former prevailed in the latter instrument. Furthermore, all the loans made by the bank to Guevara were devoted by the latter to commercial transactions, and although this circumstance by itself would not be sufficient to ratify the presumption, it is an element which, taken to-gether with the origin of the previous transactions, justifies the conclusion we have reached.

█ The appellee urges that, according to the judgment of the Supreme Court of Spain of April 8, 1926, 170 *J. C.*

586, the circumstance that a promissory note arises from commercial transactions "should not be presumed by the mere fact that it is drawn . . . to order . . . but that, on the contrary, this circumstance must necessarily appear proved in order to render the promissory note a mercantile instrument." If the effect of that decision is to reverse the doctrine laid down in the judgment of January 25, 1898, *supra,* footnote 2, adopted and ratified by this court for nearly forty years, we do not feel bound to follow it.[6] The presumption that a promissory note drawn to order arises from commercial transactions "unless the contrary is shown" means that said presumption operates in favor of the defendants and that "it is incumbent on the plaintiff to present evidence to overcome said presumption." That the decisions in Spain are still construed in this manner, notwithstanding the judgment above cited, is shown by R. Gay de Montellá in his *Código de Comercio Español Anotado,* 1936 ed., when he says:

"What the lawmaker failed to state when regulating the matter of drafts, vouchers, and promissory notes payable to order, in connection with their commercial character, has been repeatedly stated by the Supreme Court in its decisions. There are mercantile and civil drafts, vouchers and promissory notes. As to the first of these, it is not necessary for the drawer and drawee to be merchants, as has been suggested by some textwriters in their comments on these sections. The mercantile character of these instruments arises exclusively from the object of the transactions that has given rise to them. *If these transactions proceed from commercial activities or tend to give financial support for the purchase of raw materials,* or machinery, *or are carried out to meet situations arising from the stock exchange, or to obtain cash to establish a business, then the commercial character of the transaction overcomes the subjective character of the contracting parties,* and consequently the instrument falls under the Code of Commerce, by means of which the

---

[6] As stated in *Ex parte García,* 44 P.R.R. 286, upon applying the rule of *stare decisis:* "Once a question has been deliberatedly settled after solemn argument, it should not be disturbed unless the ruling be so manifestly erroneous that it can not be supported without doing violence to reason and justice."

draft, voucher or promissory note payable to order, may be endorsed and guaranteed, or may be protested and subjected to the same requisites of collection as a bill of exchange. This is the fundamental aim of the Code of Commerce in its regulation of the promissory notes to order, which regulation is confirmed by the judgments of December 12, 1889, April 18, 1896, November 25, 1898, and May 11, 1927. . .

"It shall be incumbent on the judge, upon weighing the evidence adduced, to classify the instrument as civil or mercantile, *and according to the language of the judgment of January 28, 1898, he shall favor the mercantile character if, in the absence of evidence to the contrary, the instruments involved are promissory notes payable to order and their endorsements.*" (Vol. III–2d, pp. 667–8.) (Italics ours.)

In view of the fact that more than eleven years have elapsed since the date of maturity of the promissory note to the filing of this suit for recovery, and having reached the conclusion that the same has a mercantile character, it is obvious that the action has prescribed pursuant to § 946 of the Code of Commerce. The lower court erred in so failing to decide, and therefore the judgment should be reversed and another rendered dismissing the complaint.