[Civ. No. 13254.   Second Dist., Div. One.   Nov. 21, 1941.]

ADELAIDE R. JONES, Appellant, v. RE–MINE OIL
COMPANY (a Corporation) et al., Respondents.

Cannon & Callister and David H. Cannon for Appellant.

Henry G. Bodkin and Benjamin W. Henderson for Respondents.

SHAW, J. *pro tem.*—Plaintiff appeals from a judgment entered against her on findings made by the trial court after a trial of the issues without a jury. The complaint, as amended, contains three counts. In the first count plaintiff alleges that she paid to defendant Goetz the sum of $49,500 on his promises that he would use it with an equal amount of his money, or property of that value, to form a Nevada corporation, to carry on its objects and purposes and to acquire property for it; that the ownership of the stock of such corporation would be equally divided between plaintiff and defendant Goetz, and they would have equal voice in its management and control and receive equal income from it; that a strict account would be kept of its business and affairs, and that plaintiff would be furnished at regular intervals and on request, a full and complete statement of its assets, liabilities and income. It is further alleged that Goetz caused defendant Re-Mine Oil Company to be organized as a Nevada corporation, with capital stock of 2,500 shares, and caused it to issue in plaintiff's name two certificates of stock, for 1,250 shares each, of which she received and still holds one, and the other, after plaintiff had endorsed it in blank, on Goetz' statement that the promises alleged would be performed, was kept and is held by Goetz. Plain-

tiff also alleges that the promises alleged were made by Goetz without any intention of performing them and were not performed in various respects. While this count is long, we deem it unnecessary to set forth here further details of its allegations. On it plaintiff seeks a judgment that she is the owner of all the stock in and property of the defendant corporation. Defendant Goetz denies all these allegations of fraud, and in particular denies that the agreement between him and plaintiff required him to use an amount of his own money or property equal to the contribution of plaintiff, and affirmatively sets forth the terms of that agreement, as he claims them to be, and by his prayer asks for a determination of the rights of the parties in accordance with the agreement as he alleges it. The other defendants deny practically all of this count.

In her second count plaintiff alleges that she paid to defendant Goetz the sum of $49,500, to be held or used by him as her trustee or agent; that he has used it to acquire properties for plaintiff, the nature of which is unknown to her, and that he has never accounted and refuses to account to her therefor. By amendment at the trial plaintiff added a third count in the form of a common count for money had and received in the sum of $49,500. These counts are denied by all the defendants, and were found by the court to be untrue.

The cause of action stated in the first count is obviously based on fraud, of the type which consists of making a promise without any intention of performing it (section 1572, Civil Code). While the word "representations" appears frequently in this count, no statements of existing fact are alleged to have been made by Goetz. We have above set forth the substance of the statements charged to him, and they are all of a purely promissory nature. This cause of action would be defeated if the proof failed to show either the making of the promises alleged or the lack of intention to perform them. The promise principally relied on here by plaintiff is that Goetz would put into the corporation an amount of his money equal to that contributed by plaintiff, or property of that value. The court found that this promise was not made, and the promise that was made was substantially that set forth in Goetz' answer; that in performance of this agreement plaintiff and Goetz organized defendant cor-

poration as a Nevada corporation with a capital stock of 2,500 shares, all of which was sold, issued and delivered to plaintiff in Nevada for $49,500; that this sum was paid to the corporation by Goetz and this payment was treated by plaintiff and Goetz as repayment to plaintiff of a loan of $49,500 previously made by plaintiff to Goetz; and that the stock was issued in two certificates for 1,250 shares each, both in plaintiff's name and delivered to plaintiff, one of which plaintiff endorsed and delivered to Goetz to be held in accordance with the agreement, which provided that "when the sum of $49,500.00 would have been paid to plaintiff by way of dividends and salary or otherwise from said corporation, one half of said stock would be owned by defendant Ralph L. Goetz and the other half by plaintiff."

The organization of the corporation and the issuing of these two stock certificates and delivery of one of them to Goetz are not in dispute. In other respects these findings are supported by the testimony of Goetz, who directly testified, among other things, that he did not make the agreement which plaintiff alleged, and that the allegations of his answer, which were read to him as part of a question, correctly stated the agreement. Goetz is corroborated in many respects by the witness Johnson, a Nevada attorney who attended to the organization of the corporation in Nevada, and testified to conversations which he heard there between plaintiff and Goetz regarding their agreement, in which were stated the principal terms of that agreement as testified to by Goetz.

The attack on the evidentiary support of the findings resolves itself, in large part, into an assault on the credibility of the testimony given by Goetz, it being claimed that by reason of self-contradictions and inconsistencies, as well as contradictions by other witnesses, it should not have been believed. But these matters present merely questions for the trier of facts, whose decision cannot be reversed on appeal; they do not stamp the testimony as inherently incredible. (*People* v. *McMillan* (1941), 45 Cal. App. (2d) (Supp.) 821, 827 [114 Pac. (2d) 440, 444], and cases there cited.) The parts of Goetz' story ·which were accepted by the court were, as already stated, corroborated to some extent, and there is nothing about the story which is contrary to human experience or impossible of belief. It suggests that plaintiff may have made a bad deal, from a business stand-

point; but the world is so full of such deals that testimony depicting one cannot for that reason be called incredible. ■ Neither can a transaction be condemned as fraudulent for the sole reason that the party complaining has made a bad bargain.

■ Defendant Goetz admitted and the court found that he promised that strict account would be kept of the corporation's business and affairs and that plaintiff would be furnished with statements thereof at regular intervals and on request. The evidence shows that defendant Erickson, who was secretary of the corporation, kept books of account for it, and there is nothing to show that they were not correct and complete. At least one statement of the corporation's condition was furnished to plaintiff, though not until after this action was begun, and it does not appear that she requested any others. These promises appear to have been substantially complied with, and any non-compliance appearing was consented to by plaintiff. The same is true of all the other promises which the court found were made by Goetz. There is nothing in the evidence compelling a finding that any promise made by Goetz was made without the intention to perform it, and the trial court found plaintiff's allegation in this respect to be untrue.

Plaintiff contends further that her dealings with Goetz were in violation of the California Corporate Securities Act [Deering's Gen. Laws, 1937, Act 3814] and for this reason they were void and the stock issued to her was also void, and that therefore such stock constituted no consideration for the payment of her money to the corporation and she may recover it from all parties concerned. It is in evidence without dispute that no permit was obtained from the California Corporation Commissioner for the issue of any of the stock which plaintiff received, or for the making of any of the other agreements with her.

■ In this connection the trial court found that "all of said stock was sold, issued and delivered in the State of Nevada to plaintiff," and that "no stock of said corporation was sold or otherwise disposed of in the State of California." The evidence shows without dispute that the defendant corporation was organized under the laws of Nevada; that at the time of its organization plaintiff and Goetz were in Nevada;

that the money paid for the stock issued to plaintiff was paid to the corporation in Nevada, and that the certificates for said stock were delivered to her in Nevada. These facts, if they stood alone, would show a transaction completely carried out in Nevada, and the laws of California could have no application to such a transaction. (*Robbins* v. *Pacific Eastern Corp.* [1937], 8 Cal. (2d) 241, 277 [65 Pac. (2d) 42]; *In re Motor Products Mfg. Corp.* [1937], [C. C. A. 9], 90 Fed. (2d) 8.)

Plaintiff argues further, however, that preceding the events just mentioned there were agreements made in California which were in violation of the Corporate Securities Act, and that their invalidity infects the subsequent dealings and renders them also void. First we are pointed to exhibit 6, an agreement of August 26, 1936, made after plaintiff had loaned defendant $49,500. That agreement read as follows:

"Los Angeles, California,
"August 26th, 1936.

"Mrs. Wm. A. Jones,
"Hermoyne Apts.,
"Los Angeles, Calif.

"Dear Mrs. Jones:

"In consideration of the loan to me by you of $49,500, for which I agree to pay you interest at four per cent per annum, I also agree that if I should drill some oil wells with any of this money which you loaned me, that I will give you fifty per cent of all the oil which I obtain after deducting the landowners royalty on such property as the well may be drilled upon, and that that royalty paid to the landowner shall not exceed 25 per cent. There are no other agreements of any kind between us except those stated herein.

"Yours very truly,
"R. L. GOETZ.

"Accepted Adelade ReMine Jones,
"Aug. 26, 1936."

It is contended that this agreement was a security within the scope of the Corporate Securities Act. Its character in that respect need not now be determined. Assuming that it was wholly invalid, the utmost possible effect of such invalidity would be that Goetz held money belonging to plaintiff and was obligated to return it at once to plaintiff. The

parties could deal with this resulting situation by such new and independent agreement as they might deem proper, and if such new agreement were otherwise valid, it would not be avoided because of any invalidity of their previous dealings. That they did make such a new agreement, amounting to a novation, is shown by sufficient evidence. The transaction as carried out does not conform to exhibit 6, and Goetz testified that the arrangement set forth in that exhibit was "changed when we decided to organize a corporation in Nevada," and then proceeded to state the new arrangement substantially as it was carried out.

The agreement superseding exhibit 6 was first made in California, as Goetz admits, and plaintiff next contends that this agreement was, in effect, a subscription to stock of a corporation to be thereafter formed, and not having been made in accordance with the Corporate Securities Act, it was void, even though the corporation was to be formed outside of this state. This point also may pass undecided here. Goetz further testified, after stating the agreement made in California, "then we again went into the agreement when the corporation was organized, and further agreed that that was our agreement. Q. In other words, you repeated in Nevada what your agreement had been in California; is that right? A. That is true." In this he was corroborated to a considerable extent by the witness Johnson, whose testimony we have already mentioned. Assuming once more the invalidity of the agreement made in California, this testimony shows no invalidity of the agreement made in Nevada.

The case of *Robbins* v. *Pacific Eastern Corp., supra* (1937), involved a situation similar to that we have here. Agreements involving and providing for the issuance of stock in a New York corporation (referred to as Trading Corporation) to be exchanged for stock in a California corporation (designated American Company), had been made in California, without the obtaining of any permit therefor under the Corporate Securities Act, and the parties owning the stock of the California corporation appointed an agent who took their stock certificates to New York and there exchanged them for certificates of stock of the New York corporation, and it was held that the transaction in New York was valid against an attack like that made here, the court saying (at p. 277): "As already indicated, even if it

be assumed that the Corporate Securities Act did apply to the negotiations had in this state, and even if it be assumed that the executory contract, so far as the seller—the Trading Corporation—is concerned, was illegal, nevertheless, the performance and execution of the contract in New York, being legal there, and being complete in themselves, stand independently of the prior illegality. . . . Contracts which are illegal only because of the place or time of their making may be later adopted at places or times when or where they are not unlawful. . . . If the offer of July 31 or August 1, 1929, was illegal, and if the other activities of the Trading Corporation in California were illegal, in fact, even if the executory contract to sell was illegal, that would not prevent the parties from later making another legal contract in New York dealing with the same subject matter. The authorities are quite uniform in holding that the mere act of performing in accordance with the terms of the original offer or executory contract may amount, in itself, to a lawful contract. Stated another way, it does not impair the validity of a sale when made that the prior contract to make it was illegal. This is so because the sale or executed contract may legally stand on its own feet, independent of the prior executory contract.'' The court further said: ''The application of these principles to the present appeals would be quite obvious had the stockholders of American Company, after having received the offer from the Trading Corporation (which offer is assumed to have been illegal) gone to New York themselves and accepted delivery of the Trading Corporation certificates, instead of doing so by agent. Then, obviously, the New York transaction would stand independently of the prior negotiations in California.'' (*Robbins* v. *Pacific Eastern Corp.*, *supra*, p. 283.)

We regard this decision as determinative of all the points raised here under the Corporate Securities Act. All the parties here did go in person to Nevada; they there organized a corporation; they there paid for and had issued shares of stock in that corporation, and they there made an agreement regarding the conditions on which they would hold the shares. No suggestion is made that any of these acts was invalid under Nevada law. California law can have no application to them and they must be regarded as valid here. Some suggestion is made in the case just cited that a purpose to

evade California law might affect the conclusion to be reached in this matter. We doubt whether that suggestion was meant to apply to a case where all parties go to another state and there engage in and complete a transaction which is valid under the laws of that state, but we need not resolve this question, for there is no evidence of such purpose here.

Plaintiff relies on *Gillis* v. *Pan American Western Pet. Co.* (1935), 3 Cal. (2d) 249 [44 Pac. (2d) 311], but we find no help for her in that decision. There the stock in question was issued and sold in California, though by a foreign corporation, and the point decided was merely that it is within the power of California to·regulate the issuance and sale *within its borders* of stock of a corporation organized elsewhere. We have no such question before us here.

The judgment awards defendant Goetz declaratory relief asked for by him, establishing his rights in the stock and the corporation. No complaint is made of the nature or extent of this relief, nor is it claimed that this is not a proper case for such relief, generally speaking, and hence we have not considered these matters. But it is urged, in effect, that Goetz is not entitled to such relief in this case because he does not come into court with clean hands. It appears from the evidence that at the time of the dealings under consideration a money judgment existed against Goetz, and it is claimed that he had the certificate for the stock which would ultimately be his issued and left in the name of plaintiff in order to defeat the collection of this judgment. Basing the argument on this claim as to the facts, plaintiff invokes the rule stated in 12 Cal. Jur. 1026, that, "One who has transferred his property in order to defraud his creditors cannot thereafter recover from his grantee that which he has conveyed", citing also *Allstead* v. *Laumeister* (1911), 16 Cal. App. 59 [116 Pac. 296], where the same rule was applied to one who did not himself convey property, but on buying it had it conveyed to another in order to avoid its seizure on a judgment against himself, and other cases of the same tenor. There can be no doubt of the rule of law thus invoked, but the evidence does not require its application to this case.

The evidence on this subject came altogether from defendant Goetz. After stating the existence of the judgment and its origin, he further testified: "I did not think that it was proper that I should pay it, and I didn't want to pay it, so

I remembered that they might—if I did business with just this agreement it wouldn't be any protection for Mrs. Jones; somebody could come in there, maybe, and try to collect that judgment. So, I suggested to Mrs. Jones—explained all that to her. . . . So, that is when we decided to form a corporation. . . . I explained to Mrs. Jones that it would be for her protection to operate under a corporation rather than this agreement. . . . '' This testimony shows a desire to protect plaintiff from Goetz' creditors rather than an intent to defeat the collection of the debts. The ''agreement'' mentioned here is exhibit 6, which recited a loan to Goetz and stated that if he should drill oil wells with the money, he would give plaintiff 50 per cent of the oil. Under this agreement the wells or other property in which he might put the money lent would be his property and of course subject to the claims of his creditors, which might result in loss to plaintiff of what she was to receive. An intent to protect her against such loss, even from Goetz' creditors, does not stamp the transaction as fraudulent on his part. The same rule applies to the transaction as actually carried out. The stock held by Goetz was not to become his until the amount of plaintiff's investment had been returned to her, and if in the meantime that stock were allowed to stand of record in his name his creditors might resort to it; so that the procedure followed, of leaving it in her name, was for her protection.

The fact alone that Goetz did not wish to pay the judgment does not conclusively indicate fraud; nor does the fact, shown by the evidence, that later Goetz stated to other creditors that he had no interest in the corporation here involved necessarily require a conclusion that his intent was fraudulent at the time of its formation. If such fraud existed it was in the nature of an affirmative defense to Goetz' demand for declaratory relief, and the burden was on plaintiff to show it. Even if we concede that the evidence might have supported a finding of fraud, the trial court's finding against it, not expressly stated, but implied from the findings and conclusions in Goetz' favor, is also supported, and is binding upon us.

It is suggested that Goetz caused himself to be paid sums of money for traveling expenses from the corporation's funds, and that this was done contrary to the agreement between him and the plaintiff and without authority from the

corporation, and that defendant Erickson is also liable for this amount. Nothing is alleged in the complaint about this claim. It belongs to the corporation, and this action does not purport to be brought in the corporation's behalf. Moreover, plaintiff assumed control over the corporation prior to the trial, electing a board of directors of her own choosing, so that she is not now in a position to maintain as stockholder a representative action in its behalf on this matter.

Finally, plaintiff contends that even if all of her other points fail, she should have had judgment against defendant Goetz for $1,000. The evidence shows without dispute that the defendant corporation made several loans to plaintiff and to Goetz; that one of these loans to plaintiff for $1,000 was made to her at Goetz' suggestion, and that she at once reloaned this amount to Goetz. It has not been repaid and the contention is that plaintiff should have judgment for it, with especial reference to her third count, which is for money had and received. Obviously this claim is not within the scope of the causes of action set up in her first and second counts. The court found the allegations of the third count to be untrue. The common law, from which we derive our forms of pleading known as the "common counts," knew a count for "money lent" which was the appropriate form in which to state a cause of action for money loaned. (See 17 Cal. Jur. 577, *et seq.*) It has been held that proof of a loan of money will not support a count for money had and received (*Scarbrough* v. *Blackman* [1895], 108 Ala. 656 [18 So. 735]); and while, under the liberal construction given pleadings on appeal, especially where an issue has been tried without objection, such a variance might not afford ground for a reversal of a judgment for plaintiff (See *Horka* v. *Wieczorek* [1917], 64 Ind. App. 387 [115 N. E. 949]; 41 Corp. Jur. 2), a judgment for defendant based on findings which recognize the variance, is not erroneous and should not be reversed.

Other points made in the briefs have been considered, but are not deemed to require discussion here or to show ground for a reversal.

The judgment is affirmed.

York, P. J., and White, J., concurred.