**L. S. ROBINSON, Plaintiff-Appellant,**

v.

**CUPPLES CONTAINER CO. et al.,
Defendants-Appellees.**

No. 73–3094.

United States Court of Appeals,
Ninth Circuit.

March 25, 1975.

---

Noble K. Gregory (argued), San Francisco, Cal., for plaintiff-appellant.

Robert D. Raven (argued), of Morrison, Foerster Holloway, Clinton & Clark, San Francisco, Cal., for defendants-appellees.

## OPINION

Before BARNES, WRIGHT and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Plaintiff Robinson appeals from an adverse judgment in his suit for damages under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and rescission of a stock exchange contract under Cal.Corp.Code § 26100, based on diversity. We affirm.

The plaintiff and his partner, Paul Merner, operated Magi-Cup, a plastic cup manufacturing company in California. Desiring a broader base of financing and an opportunity to move into a national market, plaintiff approached defendant Cupples Container Company (Container) at a trade meeting in Nevada in November of 1966. He suggested the possibility of a merger and invited Container to examine his plant and financial reports.

After several months of negotiation, Container agreed to purchase Magi-Cup's stock. Plaintiff demanded Container stock in return for his shares of Magi-Cup while his partner accepted cash and a note. The contract of sale was signed in March of 1967 in Missouri, where Container had its headquarters. The exchange of stock also took place there.

After the exchange of stock, plaintiff acted as head of the former Magi-Cup plant until he was removed in November of 1967. He still holds the Container stock he received in the exchange and remains a director of Container.

He filed suit in October of 1969, his amended complaint alleging that Container had violated § 10(b) and Rule 10b–5 by falsely representing that Robinson would be placed in charge of all Container's cup manufacturing operations following the stock exchange (executive claim), by falsely representing that Container would invest significant sums in the expansion of the Magi-Cup operation on the West Coast (investment claim), and by falsely representing the value of Container stock as a basis for the exchange ratio (value claim). Based on diversity, plaintiff also sought rescission of the exchange, arguing that the transaction was void because Container failed to register its stock in California prior to soliciting and negotiating the exchange there.

After the plaintiff rested his case, the court directed a verdict for the defendant on the investment claim, holding that there had been no material misrepresentation. Following presentation of defendant's case, the court directed a verdict on the executive claim. The value claim was given to the jury with a standard of duty instruction objected to by plaintiff. The jury found for the defendant.

The court dismissed the state claim prior to trial, holding that plaintiff had failed to allege that the contract was executed or the Container stock delivered in California, as required by California case law.

I.

## MATERIAL MISREPRESENTATIONS

Plaintiff alleged that Container violated § 10(b) of the Securities Exchange

Act and Rule 10b–5[1] by making promises which were false when made concerning the executive and investment claims and by misrepresenting the financial picture and value of Container's stock.

As we stated in Marx v. Computer Sciences Corporation, 507 F.2d 485, 489 (9th Cir. 1974):

> The applicable test of materiality is essentially objective (see 2 Bromberg, Securities Law: Fraud § 8.3, at 201 (1973)): " . . . whether 'a reasonable man would attach importance [to the fact misrepresented] in determining his choice of action in the transaction in question.' " List v. Fashion Park, Inc., 340 F.2d 457, 462 (2nd Cir. 1965).

Where the representation in question is a promise of one of the parties, the representation must be viewed in the light of the relationship of the parties, the context in which the statement was made, the experience and bargaining position of the investor and the nature of the transaction as well as the character of the underlying fact. *Cf.* Taylor v. Smith, Barney & Co., Inc., 358 F.Supp. 892, 895 (D.Utah, N.D.1973), and cases cited there.

*Investment Claim.*

At the close of the plaintiff's case, the court directed a verdict for Container on the investment claim. In reviewing the directed verdict

> we are required to decide "whether the evidence in its entirety would rationally support a verdict for the plaintiff, assuming that the jury took, as it would be entitled to take, a view of the evidence most favorable to the plaintiff." Wilkerson v. McCarthy, 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 . . . (1949) (Frankfurter, J., concurring).

Uniform Oil Co. v. Phillips Petroleum Co., 400 F.2d 267, 268 (9th Cir. 1968).

Plaintiff based his argument on four letters which indicated Container's awareness of the need for funds to expand the Magi-Cup plant, including payment for equipment already ordered for such expansion. Plaintiff's partner, in the course of negotiation of the contract of sale, asked that a specific provision on investment be placed in the agreement. In the last letter, Container stated:

> As to paragraph # 2, Cupples Container Corporation will not state or agree in the contract to come to a "substantial sum that it proposes to invest in Magi-Cup, etc."

The contract ultimately signed made no provision for investment by Container in the Magi-Cup plant. Taken in the context of the negotiations and Container's clear refusal, prior to execution of the contract, to commit itself to investment in the plant, the representation alleged by the plaintiff cannot be said to be material. No reasonable investor would attach importance to the earlier statements about investment in making his decision to execute the stock exchange contract.

*Executive Claim.*

Plaintiff alleged that the chief executive of Container, at a meeting three months before the execution of the stock exchange contract, represented that Robinson would be placed in charge of all of Container's cup manufacturing operations after the merger. Defendant denied it.

Plaintiff conceded that he never raised the issue again during subsequent negotiations nor did Container make any mention of it. Nothing was said in the contract about this alleged representation, although plaintiff was required to tender his resignation as an officer of Magi-Cup and promise not to compete with Container or have any dealings with a company with a name similar to Magi-Cup, unless as an officer of Magi-Cup itself.

---

1. Rule 10b–5 makes it unlawful for any person in connection with the sale or purchase of securities "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ." SEC Rule 10b–5(b), 17 C.F.R. § 240.10b–5(b).

Plaintiff, under questioning by his own attorney, stated that the meeting at which the promise had been made was "exploratory."

No proof was offered of the falsity of the alleged promise except the fact that Robinson had never been placed in charge of Container's manufacturing operations; Container had denied making the promise and asserted that it had intended only to place him in charge of the former Magi-Cup plant.

Here the parties were engaged in arm's length negotiations for the sale of a manufacturing company. Several months of negotiation preceded the execution of the stock exchange contract—negotiations in which plaintiff and his partner were actively engaged and in which they were represented by counsel. Employment questions were not foreign to these dealings. The terms of the contract, while not dealing with the alleged executive position with Container, stipulated terms which placed plaintiff's continued employment as an officer of Magi-Cup within the discretion of Container.

Plaintiff makes no allegation that defendants dissuaded him from having the contract provide a guarantee of his employment with Container. In fact he admits that Container made no statement at all about it after the initial exploratory meeting.

The alleged promise of employment cannot be regarded as a matter to which a reasonable investor would attach importance where it was made at an exploratory meeting followed by several months of arm's length negotiations (in which the experienced parties had assistance of counsel) leading to a detailed contract of sale. Section 10(b) has not converted the merger process into a game of chance in which any remark, irrespective of the ultimate contract provision, can lead to liability.

It should be emphasized that we are not faced with a contract of adhesion or negotiations in which one of the parties had a significant bargaining advantage. Moreover, the parties were in no confi-

dential relationship. The negotiations in question involved arm's length bargaining by experienced businessmen who were represented by counsel. The decision on the materiality of such an alleged representation might be different if these elements were absent. In this case, the district court properly directed a verdict for the defendant.

## II.

### JURY INSTRUCTIONS ON DUTY STANDARD

Plaintiff argues that the district court erred in refusing to instruct the jury on a strict liability standard with respect to the value claim. The court instructed the jury to find Container liable for a material misrepresentation if they found that defendant had "intentionally or negligently misrepresented or failed to declare facts regarding the fair value of Container stock."

In White v. Abrams, 495 F.2d 724, 728 (9th Cir. 1974), this court rejected a claim that § 10(b) imposed a duty of strict liability to insure the truth and reliability of material representations made by persons in connection with the sale or purchase of securities, saying:

> We reject such a broad construction since there is no indication that Congress, in passing section 10(b) of the Securities Exchange Act of 1934, or that the Securities and Exchange Commission, in issuing rule 10b–5 thereunder, intended that "anyone should be an insurer against false or misleading statements made non-negligently or in good faith." Kohn v. American Metal Climax, Inc., 458 F.2d 255, 280 (3rd Cir. 1972) (Adams, J., concurring and dissenting).

In *Abrams* we established a flexible standard of duty based on the relationship between the parties, the availability of information to them, and a variety of other factors relating to the context of the representation in question. 495 F.2d at 735–736. Under this standard, the plaintiff can have no complaint about the instruction given.

## III.

### STATE LAW CLAIM

■ The plaintiff also sued in diversity asking for a rescission of the exchange contract on the ground that the transaction was void under Cal.Corp. Code § 26100. The district court dismissed this claim before trial, holding that California case law required an allegation that the execution of the contract or the delivery of the unregistered stock took place in California where the transaction was valid under the law of another state. We affirm this ruling.

Plaintiff argued that the exchange was void since negotiations, solicitation and attempts to sell Container's stock allegedly took place in California at a time when the stock was not registered there. California Corporation Code § 26100 provided at the time of the transaction:

> Every security of its own issue sold or issued by any company without a permit of the commissioner then in effect authorizing the issuance or sale of the security is void.

Section 25009(a) defined "sale" as "An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale . . an exchange."

It should be noted that plaintiff initiated the negotiations leading to the sale by communicating with the defendants in Nevada. Moreover, plaintiff was given stock in return for his shares in Magi-Cup at his own request while his partner received cash and notes. There is no question that the contract was executed in Missouri and the stock delivered to plaintiff there. The sale of Container stock concededly was valid in Missouri.

Container argued and the district court agreed that the transaction was valid in Missouri and that it was therefore not voided by operation of § 26100. They rely for this proposition on the California Supreme Court's decision in Robbins v. Pacific Eastern Corp., 8 Cal.2d 241, 65 P.2d 42 (1937).

In Robbins the owners of a California corporation traded their stock for that of a New York corporation. The court found that the contract had been signed and the stock delivered to the plaintiff's agent in New York where the transaction was valid.

At the time of the transaction, the predecessor to § 26100 did not encompass sales of stock and thus did not reach solicitations and attempts to sell. However, an earlier California Supreme Court decision, Pollak v. Staunton, 210 Cal. 656, 293 P. 26 (1930), suggested that negotiations in California leading to a sale of securities in Nevada would fall within the operation of the voiding statute. The issue was far from clear since the Pollak court also found a constructive delivery in California. The court held the transaction void.

The California court held in Robbins that it need not decide whether the presence of intrastate negotiations would void a subsequent extra-territorial transaction, ruling that:

> even if the executory contract to sell was illegal, that would not prevent the parties from later making another legal contract in New York dealing with the same subject matter. * * * Stated another way, it does not impair the validity of a sale when made that the prior contract to make it was illegal. This is so because the sale or executed contract may legally stand on its own feet, independent of the prior executory contract.

65 P.2d at 61.

■ The decision of the court would thus apply to the present case in which it is alleged that there was an offer, attempt, or solicitation of sale within the state in violation of the clear provisions of § 26100, followed by a valid exchange in Missouri.

The Robbins line of cases has not been overruled. In B. C. Turf and Country Club v. Daugherty, 94 Cal.App.2d 320, 210 P.2d 760 (1949), the court upheld the validity of the sale in Canada of stock to California residents. The defendant had initially discussed in California the possibility of raising funds to buy a racetrack in Canada. He returned to Canada

where he formed a corporation and where he subsequently sold its shares to California purchasers.

The court held that he had not actively solicited the sales in California, but merely responded to the inquiries of investors from that state. The sales and delivery of stock took place in Canada where the transactions were valid. The court concluded that "even though the negotiations had in California violated the California statute . . . the securities issued and delivered in the foreign state to California stockholders are valid securities." 210 P.2d at 765. *See also* Jones v. Re-Mine Oil Co., 47 Cal. App.2d 832, 119 P.2d 219 (1941).

Subsequent cases have limited the rule of *Robbins* to a narrowly defined set of circumstances. Stock transactions have been held illegal where the transactions were wholly intrastate and where no valid agreement followed the illegal negotiations, Ogier v. Pacific Oil & Gas Dev. Corp., 135 Cal.App.2d 776, 288 P.2d 101, 104 (1955); where there was no "substantial extraterritorial dealing," Western Airlines v. Sobieski, 191 Cal.App.2d 399, 12 Cal.Rptr. 719, 725 (1961), or where the seller actively initiated contact and solicited sale of the stock in California, People v. Mills, 162 Cal. App.2d 840, 328 P.2d 1049, 1055 (1958). The California courts have also considered significant the lack of any intent to evade the operation of the state's Blue Sky laws, *Robbins, Daugherty, Loss,* "The Conflict of Laws and the Blue Sky Laws," 71 Harv.L.Rev. 209, 236 (1957).

Thus, the district court was correct in concluding that California law would not void a stock exchange which was validly negotiated in another state, where delivery of stock and execution of the contract of sale took place there, where the sellers did not initiate the transaction and where there was no evidence of an attempt to evade the California securities laws.

The decision of the district court is affirmed.