**RORER INTERNATIONAL COSMETICS, LTD. and Rorer Group, Inc.**

v.

**Robert HALPERN**

Civ. A. No. 79–1168.

United States District Court,
E. D. Pennsylvania.

Oct. 1, 1980.

Christopher S. D'Angelo, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Narcisse A. Brown, Schwartz, Cooper,

Kolb & Gaynor, Chartered, Chicago, Ill., for plaintiffs.

Morgan, Lewis & Bockius, Philadelphia, Pa., Danziger, Bangser, Klipstein, Goldsmith & Greenwald, New York City, for defendant.

## MEMORANDUM

HUYETT, District Judge.

This is an action arising under section 10(b) (§ 10(b)) of the Securities Exchange Act of 1934 (the 1934 Act), regulations thereunder, and pendent claims under state blue sky laws. The complaint also states a breach of contract claim. Defendant has moved for summary judgment on all claims. The motion was extensively briefed by both sides, and oral argument was held. Because I can find no genuine issues of material fact on the record before me, and because defendant is entitled to summary judgment as a matter of law, defendant's motion must be granted.

Plaintiff Rorer Group, Inc. (Rorer) is a public corporation headquartered in Ft. Washington, Pennsylvania. Plaintiff Rorer International Cosmetics, Ltd. (RICL) is or was a wholly–owned subsidiary of Rorer, engaged in the cosmetics business.

From his father's death in 1971 until September 3, 1976, defendant was the president and principal shareholder of Balenciaga Parfums, Inc. (Parfums), a New York Corporation. Balenciaga, S.A., a French concern founded by the late designer, Cristobal Balenciaga, owned the worldwide rights to products bearing the Balenciaga name, including fragrance products. Under certain agreements, collectively the North American Rights Agreement (NARA), entered into in 1958 and 1960 with defendant's father, Parfums acquired the United States trademarks for Balenciaga fragrance products and was given the franchise to distribute Balenciaga fragrance products in North America.

On September 3, 1976, plaintiffs purchased Parfums. The acquisition took the form of cash payments for substantially all

the outstanding capital stock of Parfums, the bulk of which was owned or controlled by defendant. The purchase price was $1,500,000, of which $1,100,000 was paid to or set aside for the selling shareholders at closing, with the remaining $400,000 to be paid to defendant at the rate of $15,000 quarterly, pursuant to a consulting agreement.

After making the first seven payments to defendant, plaintiffs refused to pay anything further. This action followed. As elaborated by plaintiffs' answers to interrogatories, plaintiffs' claims were as follows:

1. Defendant fraudulently concealed from plaintiffs that Parfums, while under his control, created or marketed formulations of perfumes and other products not authorized by the NARA (the counterfeiting claim).

2. Defendant fraudulently concealed from plaintiffs that Parfums, while under his control, had failed to exert its best efforts to distribute Balenciaga products and to maximize their markets (the best efforts claim).

3. Defendant fraudulently misrepresented to plaintiffs that they were purchasing 100% of Parfum's outstanding shares, when in fact the transfer did not include 20 shares originally issued in the name of Sol A. Rosenblatt (the Rosenblatt shares claim).

4. Defendant fraudulently concealed from Balenciaga, S.A. the true facts respecting the terms of plaintiffs' acquisition of Parfums, despite the fact that under the NARA, Balenciaga, S.A. had right of first refusal on the disposition of its North American licensee (the first refusal claim).

5. Defendant, by engaging in the above misconduct, breached the consulting agreement (the contract claim).

At oral argument, counsel for plaintiffs withdrew the right of first refusal claim. He also abandoned the best efforts claim as a separate substantive claim, noting however that it was in reality a part of the counterfeiting claim. Thus I shall discuss the best efforts claim, the counterfeiting claim, the Rosenblatt shares claim, and the contract claim.

■ Turning first to what plaintiffs now consider the best efforts claim subsection of the counterfeiting claim, I note that it is undisputed on the record that plaintiffs had actual knowledge that Parfums, while under defendant's control, had failed to exert its best efforts to distribute Balenciaga products and to maximize their markets. Exhibit 26 to defendant's motion, an internal memorandum to plaintiff Rorer's board of directors, states in part, "Balenciaga has not produced exceptional sales in the U. S. because the products have not been fully promoted...." Further, the affidavit of Mr. Peters, Rorer's president during the period under consideration, states at paragraph 8 that Juan Ellacuria, president of Balenciaga S.A., told affiant "that Parfums had been undermining the Balenciaga trademark for years, and that the Halperns and Parfums had consistently refused to make a genuine effort to expand the sales of Balenciaga fragrances in the franchised territories." Thus the record clearly shows that Balenciaga, S.A. considered Parfums in violation of the NARA due to failure to exert best efforts, and that plaintiffs knew that best efforts had indeed not been exerted. Plaintiffs have presented no record support whatsoever to the contrary. Thus there exists no genuine issue as to this matter. Defendants are entitled to summary judgment as a matter of law on the best efforts claim because, plaintiffs having had actual knowledge of this situation, defendants cannot be held liable for having concealed that information where the "total mix" of information available to the purchasers put them on actual notice of the problem. *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 606 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Spielman v. General Host Corp.*, 402 F.Supp. 190 (S.D.N.Y.1975); *Phillips v. Reynolds & Co.*, 294 F.Supp. 1249 (E.D.Pa. 1969).

■ Defendant argues in regard to the counterfeiting claim that (1) plaintiffs were properly advised of the facts which Balenci-

aga S.A. considered to constitute counterfeiting, and that (2) even if no such facts were communicated to plaintiffs, the omitted facts were not material to plaintiffs' investment decision in that absence of counterfeiting was not relied upon by plaintiffs in making that decision. Plaintiffs have created a genuine issue as to whether they were actually advised of all of the facts underlying the counterfeiting claim through the exhibits to their memorandum in opposition to the motion. However, defendant is entitled to summary judgment as to this claim because the allegedly omitted information was not material to their investment decision, and the 1934 Act and the applicable SEC regulation require concealment of material information in order for such concealment to be actionable. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. In this regard, defendant has presented considerable record support through deposition testimony of plaintiff Rorer's president during the acquisition negotiations, Mr. Peters, deposition testimony and affidavits of plaintiff Rorer's attorney for the acquisition, Mr. Duff, defendant's affidavits and deposition, and exhibits of written documents, that (1) defendant refused to make any representations concerning his or Parfum's compliance with the NARA or Balenciaga S.A.'s view of such compliance, (2) defendant conditioned consummation of the transaction at issue here on plaintiffs' withdrawing their demand for such representations, and inclusion in the documents of a written disclaimer of any representation or warranty as to Parfum's dealings with Balenciaga, S.A. and the NARA, (3) defendant specifically stated to plaintiffs' representatives that the NARA was in jeopardy, and (4) plaintiffs consciously decided to accept jeopardy to the NARA as a business risk, and proceeded with the transaction at issue here despite their actual knowledge that the NARA might not be renewed. Plaintiffs have provided no record support to contradict these facts, and have even conceded that defendant specifically warned them that the NARA was in jeopardy. Thus there is no genuine issue as to the above–mentioned facts. Nevertheless,

plaintiffs now claim that defendant withheld material information from them when he failed to disclose that he had created and marketed perfumes in a manner which placed the NARA in jeopardy. The omission which plaintiffs claim was material was defendant's failure to disclose that he had purchased ingredients for his products from International Flavors and Fragrances, arguably an unauthorized source under the NARA, thus giving Balenciaga S.A. grounds to vitiate the NARA. They claim that this information would have made them more wary of the fact that the NARA might be renounced by Balenciaga, S.A., an occurrence which later came to pass. Nevertheless, in light of the above–noted course of dealings between the parties, the written disclaimer, defendant's warnings as to jeopardy to the NARA, and plaintiffs' conscious decision to accept that known jeopardy as a business risk, defendant's alleged omission could not have constituted material information.

█ While the legal standard for materiality is somewhat nebulous, the Third Circuit has noted that the objective, reasonable man test is inappropriate where, as here, the subject transaction occurred between a single purchaser and a single seller, each well known to the other. *Thomas v. Duralite Co.*, 524 F.2d 577, 584 (3d Cir. 1975). Stating that in such a situation "the distinction between objective materiality and subjective reliance becomes obscured," *id., citing Harnett v. Ryan Homes, Inc.*, 496 F.2d 832, 838 n.20 (3d Cir. 1974), the Court quotes with approval Professor Bromberg's statement that "[a] looser or more subjective [test] may . . . be proper in direct–personal transactions because of the greater ability of one party to appreciate the position of the other." *Thomas v. Duralite Co., supra* at 584, *quoting* 2 A. Bromberg, Securities Law: Fraud § 8.3 at 199 (1971). Thus it appears that *Thomas v. Duralite* establishes a test for materiality in a situation such as the one *sub judice* which requires me to consider the subjective knowledge of the purchaser–plaintiff as well as his actual reliance *vel non* upon the alleged omissions.

In light of the above–recounted facts, it is clear that the alleged omissions were not material to plaintiffs' decision to purchase Parfums under that test.[1]

Further, I note that there is precedent for the proposition that defendant was under no duty to make further disclosures to plaintiffs as to why the NARA might be invalidated once he told them that it might in fact be invalidated. In *Hassig v. Pearson*, 565 F.2d 644 (10th Cir. 1977), plaintiff, a minority shareholder in a bank, sold his shares to defendant, the controlling shareholder, who subsequently resold his shares at a significantly higher price. At the time the plaintiff sold his shares, the defendant informed him that he was considering selling his shares. However, the defendant did not reveal that he had already received inquiries from several persons, including the eventual purchaser. The court found the omission to be subsidiary to the basic piece of information, fairly imparted, that the defendant was considering selling his own stock. Therefore it held the omission to be non–material. Similarly, in *Katz v. Realty Equities Corp. of New York*, 406 F.Supp. 802 (S.D.N.Y.1976), plaintiff charged the defendant accounting firm with omitting to disclose information regarding a series of fraudulent transactions perpetrated by a company for which they served as auditors, and of which transactions the auditors had knowledge. The accountants had refused to certify the company's financial reports. The court held that no actionable omission had occurred, stating:

> Given the disclosure which [the auditors] did make in Realty's annual report, and especially in light of [the auditors] refusal to certify that report's financial statements, the failure to make any additional disclosure called for by the complaint could not possibly have affected a reasonable investor's decision–making. [The auditor] put the public on notice that the

financial statement was not reliable; its failure to reveal every detail which gave rise to the unreliability cannot possibly be a material omission.

*Id.* at 805.

The proposition that defendant's omission was not material because plaintiffs proceeded with the acquisition despite defendant's inclusion in the documents of a written disclaimer concerning Parfums' dealings with Balenciaga, S.A. is also supported by precedent. In *NBI Mortgage Investment Corp. v. Chemical Bank*, CCH Fed.Sec.L. Rep. 1977–78 Tfr. Binder ¶ 96,066 (S.D.N.Y. 1977), the mortgage loan participation documents contained a disclaimer of any representations by defendant concerning execution, validity, enforcement or collectibility of the underlying loan. The borrower filed in bankruptcy shortly after the plaintiff purchased its participation, upon which plaintiff filed an action under § 10(b) and Rule 10b–5, claiming that it had been deceived by defendant's misrepresentations. The court granted summary judgment for defendant, holding that in light of the specific disclaimer contained in the loan agreement, there could not have been reliance by plaintiff upon any claimed misrepresentations. *Id.* Likewise *Robinson v. Cupples Container Co.*, 513 F.2d 1274 (9th Cir. 1975) supports the conclusion that the alleged omissions are immaterial in light of plaintiffs' decision to proceed with the transaction despite defendant's refusal to make any representations concerning his dealings with Balenciaga S.A. or the NARA, and indeed his insistence that consummation of the transaction be premised on the absence of such representations. In *Robinson*, the plaintiff, in the course of negotiating a contract to sell control of his company to the defendant, requested certain representations as to defendant's intended future investment in plaintiff's company. The defendant refused, and the contract ultimately signed by the parties did not contain the

---

1. I note that I am not ruling that plaintiffs did not rely on the alleged omissions as a matter of law. I recognize that defendant carries a heavy burden in this regard. *See Thomas v. Duralite Co.*, 524 F.2d 577, 585–86 (3d Cir. 1975). Rather, under the test enunciated in *Thomas v. Duralite*, the occurrence of unauthorized purchases was immaterial to *this* investment decision made by *these* plaintiffs.

requested representations. Subsequently, the plaintiff–seller commenced an action under § 10(b) and Rule 10–5, alleging that defendant had misrepresented its intention to make investment in the acquired company. In affirming the District Court's directed verdict, the Ninth Circuit held immaterial any earlier statements concerning intention to invest in light of the course of dealing whereby defendant specifically refused to include such representations in the contract itself. *Id.* at 1277.

The uncontradicted evidence that plaintiffs considered loss of the NARA an acceptable business risk, and chose to proceed with the transaction despite actual knowledge that it might be vitiated, makes this action analogous to *Chelsea Associates v. Rapanos*, 376 F.Supp. 929 (E.D.Mich.1974), *aff'd*, 527 F.2d 1266 (6th Cir. 1975). Therein the plaintiff purchasers of defendant's business initiated an action under § 10(b) and Rule 10b–5, alleging that defendant's failure to disclose the loss of a business contract constituted omission of material information. In affirming the District Court's ruling that the information was not material, the Sixth Circuit considered significant the fact that plaintiffs were unconcerned with the continued validity of that contract because they considered the purchase assets valuable despite the loss of the contract. *Chelsea Associates v. Rapanos*, 527 F.2d 1266, 1272 (6th Cir. 1975). Likewise the plaintiffs in the action at bar considered Parfums a valuable acquisition, continued validity of the NARA notwithstanding, because they proceeded with the purchase despite clear knowledge that the NARA might not be renewed. It should be noted that the *Chelsea* court made this ruling applying the more restrictive objective, reasonable man standard of materiality. *Chelsea Associates v. Rapanos*, 376 F.Supp. at 941.

Applying the facts which are uncontradicted on the record before me to the above discussion of the law, the conclusion is inescapable that the alleged omissions underlying the counterfeiting claim were not material to these plaintiffs as to this investment decision, and that defendant is thus entitled to summary judgment on the counterfeiting claim.

█ Pursuant to the same analysis, I must find that the matters underlying the Rosenblatt shares claim were not material. I note that I would reach the same conclusion under the objective, reasonable man test. At issue here are 20 out of a total of 595 shares, the absence of which never caused plaintiffs any damages because Balenciaga S.A. never challenged plaintiffs on that basis. Further, I note that it is undisputed that plaintiffs proceeded with the closing despite the revelation at closing that the holders of five outstanding shares had refused to sell. It is not reasonable to assume that plaintiffs' knowledge that twenty–five rather than five shares were outstanding, an insignificant percentage for control purposes in either event, would have altered this decision. Additionally, the attorney who handled the transaction for plaintiffs, Mr. Duff, stated in an affidavit that the Rosenblatt share issue was not material to the transaction. *See* second Duff affidavit at ¶¶ 3 and 4. This statement remains uncontradicted on the record before me. Thus defendant is entitled to summary judgment on the Rosenblatt share claim.

Plaintiffs' argument in the contract claim is that the matters alleged in this action to be securities violations constitute fraud in the inducement of the consulting agreement, and that they should thus be excused from compliance with that agreement. Because the securities law allegations all fail, as discussed above, this claim must likewise fail.

█ Finally, all remaining claims in this action are pendent state law claims. Because of the failure of all of plaintiffs' federal claims, it would not be appropriate for me to retain jurisdiction over the state law claims, and I decline to do so. Additionally, I note that these claims simply mirror the federal claims under the state blue sky law, and as such should be dismissed pursuant to the same analysis as that set forth above.

For all of these reasons, defendant should be granted summary judgment on all of plaintiffs' claims. An appropriate order follows.